UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 09-30019-RAL |
| Plaintiff, | * | |
| vs. | * | ORDER AND OPINION ADOPTING |
| | * | REPORT AND RECOMMENDATION |
| THOMAS BRYAN SCARES THE HAWK | * | AND DENYING MOTION TO SUPPRESS |
| Defendant. | * | |

**INTRODUCTION**

Defendant moves (Doc. 21) to suppress statements he allegedly made to FBI Agents Todd Dawson ("Dawson") and Michele Lakey ("Lakey") on October 22, 2008. Defendant argues that the statements were made involuntarily and in violation of his due process rights under the Fifth Amendment. Defendant also moves the Court to suppress any testimony that a polygraph examination was conducted on the Defendant, as well as testimony of Defendant's alleged failure of such exam, on the grounds that Fed. R. Evid. 403 and <u>United States v. Waters</u>, 194 F.3d 926 (8th Cir. 1999) prohibit the use of such testimony at trial. The matter is before the Court on the Recommendation of United States Magistrate Judge, Mark A. Moreno (Doc. 58). After conducting an evidentiary hearing on September 30 and October 16, 2009, the Magistrate Judge has recommended that the Defendant's motion to suppress the statement as involuntary be denied and that the motion to suppress the results and testimony of the polygraph examination be granted. The Defendant has asserted objections to the Magistrate Judge's recommendation to deny his motion to suppress the statement (Doc. 68).

1

In considering a magistrate judge's recommendation on a dispositive matter, such as a motion to suppress evidence, a district court must make a "de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1). A *de novo* review requires a district court to make its own determination of disputed issues. See United States v. Portmann, 207 F.3d 1032, 1033 (8th Cir. 2000).

The Defendant objects to the factual findings of the Magistrate Judge. When a defendant objects to the factual findings of the magistrate judge, the district judge must make its own *de novo* determination of the facts with no deference to the magistrate judge's findings. See 28 U.S.C. § 636(b)(1); Fed. R. C. P. 72(b). In order to make a proper *de novo* review of a magistrate judge's report of factual findings, the district judge must make an independent review of the record, including tapes of evidence and the transcript of evidentiary hearings before the magistrate judge. See Portmann, 207 F.3d at 1033. The Court has conducted a *de novo* review of the record, including the transcripts of the evidentiary hearing on Defendant's motion to suppress the statement (Doc. 62).

In an effort to argue that his statement was involuntary, the Defendant objects at length to the Magistrate Judge's basis for discrediting a testifying psychologist's findings of involuntariness. In reaching this conclusion, the Magistrate Judge weighed the credibility of witnesses with conflicting testimonies, specifically the psychologist and Agent Dawson. The Magistrate Judge found Agent Dawson to be a credible witness. The Court is entitled to "give weight to the magistrate judge's credibility determination," although the Court's review is to be *de novo*. United States v. Martinez-Amaya, 67 F.3d 678, 681 (8th Cir. 1995).

# FACTS

On February 24, 2009, Defendant was charged with two counts of abusive sexual contact with a child who has not attained the age of twelve years, in violation of 18 U.S.C. §§ 2245(a)(3) and 2246(3). The indictment alleges that Defendant engaged in abusive sexual contact with his infant daughters between August 1, 2007, and May 31, 2008.

Prior to being charged, Defendant traveled on his own to the federal building located in Pierre, South Dakota, where he was interviewed by FBI Agent Patrick Kleckner ("Kleckner") on October 17, 2008. After receiving his Griffin warnings, Defendant was advised that Kleckner was investigating a sex related offense involving Defendant's children. Defendant discussed the allegations, but he did not admit nor make inculpatory statements to Kleckner or to the other interviewing agent, FBI Agent Oscar Ramirez ("Ramirez"). At the conclusion of the one- to two-hour interview, the agents asked if Defendant would submit to a polygraph examination, to which Defendant agreed.

Defendant returned to the federal building on October 22, 2008, for his polygraph examination. Defendant met with Dawson in a room on the fourth floor of the federal building at approximately 10:00 a.m., where he specifically consented in writing to a polygraph examination and interview. Dawson testified at the motions hearing to the following. He advised the Defendant of his Miranda rights, as well as the right to refuse to take the test, the right to stop the test at any time, and the right to refuse to answer any individual questions. (T. 31).[1] The Defendant initialed that he understood these rights and his Miranda rights on an electronic advice of rights form, then signed and acknowledged that he was taking the test voluntarily and that no threats or promises had been used against him. (T. 31). Dawson advised Defendant that he was

---

[1]Any references to the transcript will be "T" followed by the page number or numbers.

free to leave at any point during the interview by demonstrating that the door, though closed, was unlocked. (T. 32). After the rights advisement, Dawson conducted a pre-test interview which took approximately an hour and a half to two hours. Routinely, Dawson offers the interviewee a break after the pre-test interview, but he could not recall whether a break was taken with the Defendant. (T. 36). Dawson then conducted the polygraph examination and informed the Defendant that the test results were deceptive. The polygraph examination ended approximately two and a half hours after the Defendant first arrived for the interview. (T. 43). No break was given between the polygraph exam and the post-test interview. The post-test interview began at 12:38 p.m. A ten-minute break was taken at approximately 3:50 p.m. (T. 47). Fifteen to thirty-five minutes after returning from the break, the Defendant admitted to two separate incidents involving his daughters. (T. 48). At 4:50 p.m., after the formal post-test interview, Dawson offered the Defendant an opportunity to provide a summary statement either orally or in writing. (T. 51). Defendant provided a summary taped statement which lasted fifteen minutes. At the end of the statement, at 5:05 p.m., Defendant left.

Dawson testified that during the interview of the Defendant, he did not raise his voice, yell, or get angry with the Defendant. (T. 45). The Defendant is a 42-year-old male with a high school degree and some technical training in carpentry. Kleckner testified that the Defendant had eight prior involvements with the state criminal justice system since 1985. (T. 11 and 18).

## DISCUSSION

The Defendant objects to the findings of the Magistrate Judge that the Government has sustained its burden of proof and that the Defendant's statements to Dawson and Lakey on October 22, 2008, were voluntary under the Fifth Amendment.

4

The Government must prove by a preponderance of the evidence that the Defendant's statement made to police was voluntary. United States v. Astello, 241 F.3d 965, 965 (8th Cir. 2001). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. Lebrun, 363 F.3d 715, 724 (8th Cir. 2004) (quoting Simmons v. Bowersox, 253 F.3d 1124, 1132 (8th Cir.) cert. denied, 534 U.S. 924 (2001)). The Court looks at the totality of the circumstances, Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001). In applying the totality-of-the-circumstances analysis, the Court focuses on the conduct of the agents and a defendant's capacity to resist pressure to confess, considering the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. See Lebrun, 363 F.3d at 726.

Factors which the Court may weigh in determining whether a statement is voluntary include the prolonged nature of the questioning, Lebrun, 534 U.S. at 726, the defendant's subjective understanding of his Miranda rights, Simmons, 253 F.3d at 1133-34, the age of the defendant, his lack of education, or his low intelligence, United States v. Gallardo-Marquez, 253 F.3d 1121, 1123-24 (8th Cir.) cert. denied, 534 U.S. 1031 (2001), the defendant's prior contact with law enforcement, Gallardo-Marquez, 253 F.3d at 1124, and the use of physical punishment such as deprivation of food or sleep. Hall v. Wolff, 539 F.2d 1146, 1150-51 (8th Cir. 1976).

The Court has conducted a *de novo* review of the record, as required by 28 U.S.C. § 636(b)(1). Throughout the analysis, the Court evaluated whether the facts surrounding the interview demonstrate that the conduct of the officers overbore the Defendant's will and capacity for self-determination. Considering all of the factors, the Court cannot find that the officers overbore the Defendant's will and capacity for self-determination, and for the following reasons, finds that the Defendant's statement was voluntary.

**Totality of the Circumstances**

**A.      Details of Interview**

The Court has considered the questioning tactics and other details of the interview in applying the totality-of-the-circumstances test for voluntariness.  Although Dawson concedes that he changed the modulation and inflexion of his voice as part of the conversation, he testified that he did not raise his voice, yell, or get angry with the Defendant. (T. 45).  "Raised voices do not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne."  Simmons, 235 F.3d at 1133 (citing Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993)).  The questioning tactics employed by Dawson is only one factor in assessing the voluntariness of the Defendant's confession.  Dawson also testified that, although not stated in the advice of rights form, he advised Defendant that he was free to leave at any point during the interview by demonstrating that the door, though closed, was unlocked. (T. 32). During the interview, the agents offered the Defendant a break and provided water when requested.  (T. 48).  The facts of the present case are less severe than those surrounding the interrogation in Simmons, 235 F.3d 1124, a case where three police officers interrogated the defendant and, while in close proximity to him, raised their voices and made misrepresentations regarding his accomplice confessing.  There, the Eighth Circuit found that the questioning tactics were not improperly coercive.  Similarly here, the conduct of the interviewing agent did not rise to a level that overbore the Defendant's will.

The Court also has weighed the prolonged nature of questioning and detention.  An examination of the transcript of the motions hearing convinces the Court that the Defendant was examined and interviewed over a period spanning approximately seven hours.  In considering the voluntariness of the statement, the Magistrate Judge took into account the fact that the Defendant made the confession shortly after taking a break.  The Defendant objects to this and urges the

6

Court to consider the prolonged nature of the questioning rather than the timing of the confession. In accord with prior rulings, this Court finds that the prolonged nature of the questioning itself does not render the confession involuntary. "Questioning a suspect for six or seven hours is not unconstitutionally coercive per se." Simmons, 235 F.3d at 1133; see also United States v. Hyles, 479 F.3d 958, 967 (8th Cir. 2007) (agreeing that a period of questioning spanning five or six hours was not excessive or burdensome).

**B.     Characteristics of Defendant**

In its determination of voluntariness, a court must also investigate and analyze the characteristics of the accused. See Tippitt v. Lockhart, 859 F.2d 595, 597; United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). In an effort to determine the defendant's ability to resist pressure, courts take into account the person's age, years of formal education, intelligence level, and prior experience with law enforcement. See Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001) (noting that "one of the key concerns in judging whether confessions were involuntary . . . [i]s the intelligence, mental state, or any other factors possessed by the defendant that might make him particularly suggestible").

The Defendant is a 42-year-old male with a high school diploma and some technical training in carpentry. Since 1985, he has had eight prior involvements with the state criminal justice system. The Eighth Circuit has deemed a confession voluntary where a defendant was of average intelligence and had extensive prior contact with law enforcement. Gallardo-Marquez, 253 F.3d at 1123. Similarly, the Astello court found that an 18-year-old defendant's confession was voluntary where he had completed the 11th grade and was able to understand what was said throughout the interview. Astello, 241 F.3d at 968.

The Defendant objects to the Magistrate Judge's finding that familiarity with criminal procedure is a factor that weighs in favor of voluntariness, arguing that his eight previous arrests

7

did not equate with previous interrogations. However, in applying the totality-of-the-circumstances test, courts are to consider the defendant's experience with the criminal justice system, not just the defendant's experiences with prior interrogations. Courts have considered any prior dealings, reasoning that an earlier exposure allows the defendant to more fully comprehend the seriousness of the present situation and renders the defendant less likely to be intimidated by agents. See United States v. Astello, 241 F.3d 965, 968 (8th Cir. 2001) (weighing prior experience with criminal justice system in favor of voluntariness where defendant had been arrested for three crimes and charges were waived and eventually dismissed after arrested for present case); Simmons, 235 F.3d at 1134 (weighing a previous arrest in its conclusion that defendant's statement was voluntary where the defendant had previously been arrested as a suspect in a rape case, thereby leading the court to conclude that he was "not unfamiliar with the criminal legal process").

C.  Waiver of Miranda Rights

The Eighth Circuit has placed significant weight on the fact that a Defendant had a subjective understanding of his Miranda rights at the time of the interview. See Lebrun, 363 F.3d at 726; Simmons, 235 F.3d at 1132-34. As discussed above, the Defendant was advised of his rights to have a lawyer present and expressly waived them prior to taking a polygraph examination on October 22, 2008.

The Defendant objects to the Magistrate Judge's reliance on the waiver of rights and consent to polygraph as evidence of voluntariness. Although the Defendant indicated that he understood his rights *prior* to taking the polygraph exam, the defense argues that because the Defendant was not reminded of his rights *after* the polygraph exam, the initial waiving of his rights do not show that his statement was voluntary. In a situation where a significant amount of time has elapsed between the initial waiving of the rights and the summary statement, the Eighth

8

Circuit has focused on the fact that the interviewee did not assert the rights after he initially waived them. See Simmons, 235 F.3d at 1133 (finding that a statement was voluntary where the statement was made two hours after commencement of questioning and the 17-year-old defendant did not assert them later in his videotaped statement to police). Here, the Defendant acknowledged, on tape, that he remembered being advised of his rights to counsel, that he could stop talking at any time, and that he agreed to waive those rights and talk to both agents. Because he did not assert these rights prior to making the statement implicating himself, the waiver of rights at the beginning is an indication of voluntariness.

The Court, in conducting a *de novo* review of the record, has considered the testimony of Dr. Manlove, a forensic psychologist who performed a voluntariness assessment of the Defendant. In his testimony at the evidentiary hearing, Dr. Manlove opined that Defendant's confessions were involuntary, basing his opinion on Defendant's report to him that he felt afraid and intimidated by Dawson who "seemed mad." (T. 114). Dr. Manlove pointed to questioning tactics used by Dawson, including telling the Defendant that if he confesses, "it will take the rocks off your back," and that if he does not confess, his deceased mother "wouldn't welcome him into heaven." (T. 117 and 118). Dr. Manlove also based his opinion on Defendant's self reporting that Dawson informed Defendant that other agents would think he was "trash" if he did not tell the truth. (T. 119). Dr. Manlove also took into account the length of the interview (T. 127), and Defendant's alcohol dependancy. (T. 123). As discussed above, Dawson testified that he did not get angry or yell at the Defendant. (T. 45). He further testified that he did not allude to the Defendant being "trash." (T. 88). The Court acknowledges that Dawson's testimony conflicted with what some of what Defendant told Dr. Manlove about what occurred during the interview of the Defendant, and furthermore, that Magistrate Judge Moreno found Dawson's

9

testimony to be credible. The Court is entitled to give weight to the credibility determination of the Magistrate Judge. See Martinez-Amaya, 67 F.3d at 681.

Even if the Court were to accept the statements that Defendant made to Dr. Manlove as true, the agents' conduct still does not reach the level of coercive activity that would overbear the Defendant's will and self-determination. See Simmons, 235 F.3d at 1132-33 (where three officers interrogated a seventeen year-old habeas petitioner with below average intelligence for over two hours, raising their voices in close proximity, making misrepresentations, and "telling him things would go better for him if he told the truth," court found that habeas petitioner did not prove that his will was overborne by police); Jenner, 982 F.2d at 334 (where officers interviewed habeas petitioner for six to seven hours, used questioning techniques that referenced a "bad Debbie" who was responsible, raised their voices, and accused defendant of not being honest, the court found that habeas petitioner did not prove that his will was overborne by police). The Court is troubled by the length of questioning and some of the information that Defendant related to Dr. Manlove, but the record does not support suppression of Defendant's confession.

The Court has determined the voluntariness based upon an assessment of all of the circumstances and factors surrounding the statement. Considering all of these factors, the Court cannot find that Defendant's will was overborne by police tactics. Defendant acknowledged, on tape, that his rights had been read to him and that he understood his rights but chose not to exercise them. Dawson testified that Defendant was read his Miranda rights, as well as informed of the right to stop questioning, before the polygraph examination. During his taped summary statement, Defendant acknowledged on tape that he remembered Dawson advising him of these rights and that he had not been coerced by police officials. "Cases in which a defendant can make a colorable argument that a self-incriminating statement was "compelled" despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Dickerson v.

United States, 530 U.S. 428 (2000) (quoting Berkemer v. McCarty, 468 U.S. 420 (1984)). Moreover, this Court looks at the totality of the circumstances surrounding the interview, including the agents' conduct and the Defendant's capacity to resist any pressure. Simmons, 235 F.3d at 1132-33. After considering the Defendant's age, education, and prior exposure to the criminal justice system, and the nature of the interrogation, this Court concludes that the oral confession made by the Defendant was voluntary and the agents' conduct and interviewing tactics did not overbear his free will and self-determination.

Based upon the foregoing, it is hereby

ORDERED that the Defendant's objections (Doc. 68) to the Magistrate Judge's report and recommendation are overruled. It is further

ORDERED that the report and recommendation (set forth orally on the record and at Doc. 58) is adopted. It is finally

ORDERED that the motion (Doc. 21) to suppress is denied.

Dated December 2, 2009.

        BY THE COURT:

        /s/ *Roberto A. Lange*
        ROBERTO A. LANGE
        UNITED STATES DISTRICT JUDGE